UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| R.D. LOTTIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:01cv582 |
| ) | |
| WEST AMERICAN INSURANCE ) | |
| COMPANY of the Ohio Casualty Group ) | |
| of Insurance Companies and The Ohio ) | |
| Casualty Insurance Co.  d/b/a Ohio ) | |
| Casualty Group, ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

This matter is before the court on six motions in limine filed by the defendants, West American Insurance Company of the Ohio Casualty Group of Insurance Companies and The Ohio Casualty Insurance Co.  d/b/a Ohio Casualty Group ("West American").  The parties completed briefing the motions on May 8, 2006.

Discussion

Motion in Limine Regarding Settlement Offers and Offers of Judgment or Lack Thereof

In this motion West American requests that the court instruct counsel, parties and witnesses not to mention, directly or indirectly , any statements, declarations or utterances, and/or to introduce, or attempt to introduce into evidence, any evidence concerning any settlement offer, or offer of judgment extended at any time by Defendants, or yet to be made, to Plaintiff in an attempt to settle this matter, any and all communications concerning such settlement offers or offers of judgment, or the failure of Defendants to tender any offer of judgment or settlement offers.

In support of its motion, West American argues that it is well established under Indiana law that an offer to compromise a claim is not admissible in evidence at trial should the attempted compromise fail. Dailey v. Coons, 64 Ind. 545 (1878); Cates v. Kellogg, 9 Ind. 506 (1857); Halstead v. Coen, 67 N.E. 957, 31 Ind. Ct. App. 302 (1903). This rule is based upon the law's policy of encouraging private settlement of disputes and to avoid prejudice to the party whose genuine overtures for settlement have failed. Brademas v. Real Estate Development Co., 370 N.E.2d 997, 175 Ind. Ct. App. 239 (1977); Northern Indiana Steel Supply Co. v. Chrisman, 204 N.E.2d 668, 139 Ind. Ct. App. 27 (1965). Additionally, Federal Rule of Evidence 408 states:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Lottie has not filed an objection to this motion in limine. As West American has correctly stated the law, the motion in limine will be granted.

Motion in Limine Regarding Lay Witness Expert Testimony

In this motion West American requests that the court instruct counsel, parties and witnesses not to mention, directly or indirectly , any statements, declarations or utterances, and/or to introduce, or attempt to introduce into evidence, any testimony by any lay witness concerning opinion testimony which is solely the province of experts.

Rule 701 of the Federal Rules of Evidence provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a)

2

>rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

West American states that it has reason to believe that Lottie or Lottie's lay witnesses may offer opinions regarding Lottie's property loss claims or breach of contract damages. West American argues that testimony by any person other than an individual qualified as an expert by the court in conformance with Rule 702 of the Federal Rules of Evidence should not be allowed to provide such opinion testimony. West American claims that the issues regarding causation and the nature of the damages by Lottie is such that opinions relating to them can be provided only by an expert qualified pursuant to Rule 702.

West American notes that this court's Pre-Trial Order in this case required all parties to make pre-trial disclosures of all expert opinions, and potential or expected proffered expert testimony, pursuant to Rule 26(A)(2). West American points out that Lottie has made no designation of any experts, expert opinions, or anticipated or expected expert testimony in this case. Thus West American claims that Lottie should not be allowed to call or qualify any experts relating to any issues, including the cause and origin of the two subject fires, and the amount or quantifying of Lottie's alleged breach of contract damages in this case.

West American further argues that none of Lottie's lay witnesses is qualified, or should be allowed to, offer any evidence or opinion testimony on such issues. West American claims that such witnesses do not have the proper background or expertise to offer lay opinion or testimony regarding any of these issues. According to West American, Lottie never submitted any evidence during this litigation, or provided any discovery responses or supplemental discovery responses, with any repair bills, estimates, or assessment or calculation of his property

3

loss damages to the houses themselves. West American acknowledges that Lottie did provide such repair estimates, one each per the respective properties, during the claims process. West American maintains that Lottie should not be allowed to testify himself or through other lay witnesses regarding the amounts or calculations of damages to the physical structure of the buildings, or expected repair or replacement costs.

In opposition to the motion in limine, Lottie merely states that "[t]o the extent that Defendants' Motion seeks an order that would contravene FED.R.Evid. 701 the Motion should be denied."

In reply, West American asserts that some issues in this case may relate to opinions such as the cause and origin of the fires in question, the cost of damages, repairs, or the value of Lottie's buildings. West American states that it has concerns over whether several of Lottie's witnesses may attempt to testify with opinions on issues such as those identified above. West American argues that Lottie's witnesses should not be allowed to testify until proper expertise, experience, background and evidentiary foundations have been met. West American asserts that when these issues arise, Lottie should inform the court and counsel and, to the extent necessary, West American can then have the opportunity to voir dire the witnesses. Lottie can then make an offer to prove, and these issues can be heard and decided outside the presence of the jury, avoiding confusion, potential prejudice, the risk of harm, and error of law.

This court finds that West American's motion is well-taken. While it may be that Lottie's witnesses will be fully competent to testify on the issues West American is concerned about, it is appropriate for West American to at least request that certain witnesses be questioned outside the presence of the jury as to their expertise, experience and background. Accordingly,

4

the motion in limine will be granted.

<u>Motion in Limine as to Attorney Fees and Costs of Litigation</u>[1]

In this motion West American requests that the court instruct counsel, parties and witnesses not to mention, directly or indirectly, any statements, records or documents pertaining to any costs of litigation incurred by Lottie as damages, including, but not limited to, attorney fees, expert fees, deposition costs, costs charged by witnesses for either testimony at depositions or trial, and other costs directly related to this litigation without first seeking permission from the court outside the presence and hearing of all prospective jurors and jurors ultimately selected in this action.

West American argues that the general rule in Indiana is that a party's attorney fees are not recoverable as damages in the absence of a statute or a contract stipulating the recovery of the same.  <u>Lynk v. State</u>, 393 N.E.2d 751 (Ind. 1991); <u>Indiana Alcoholic BDV Comm. v. State, Exrel Harmon</u>, 379 N.E.2d 140 (Ind. 1978).  West American points out that in the instant case, there has been no stipulation between the parties allowing for the recovery by Lottie of attorney fees or litigation expenses.  West American also points out that there is no relevant statute which provides for the recovery of these fees and expenses.   Finally, West American notes that in addition to the irrelevancy of any evidence concerning attorney fees or litigation expenses, such evidence would be highly prejudicial to the defendants.  West American states that the jury may improperly consider such evidence in reaching its determination of any damage award, and once

---

[1] The court is ruling on this motion and the Motion in Limine Regarding Plaintiff's Claimed Damages solely for the edification of counsel and to facilitate settlement negotiations prior to the trial on liability in the case.  This case remains bifurcated and damages will not be evidenced or tried during the upcoming liability trial.

5

introduced or referred to, an instruction to the jury to disregard such evidence would be insufficient to erase such matters from the jurors' minds.

In response to the motion in limine, Lottie claims that attorney fees and litigation expenses are the direct, probable, and proximate result of West American's alleged breach of contract and thus should be admitted into evidence.  Lottie cites to Meridian Mutual Insurance Co. v. McMullen, 282 N.E.2d 558, 566 (Ind. 1972), Tyler Refrigeration Corp. v. IML Freight, Inc., 427 N.E.2d 718, 721 (Ind. App. 1981), and Vernon Fire & Casualty Insurance Co. v. Sharp, 349 N.E.2d 173 (Ind. 1976), in support of his position that he can claim attorney fees and litigation expenses as damages.  However, none of these cases so hold.  Rather, the cases provide that only damages and injuries that were within the reasonable contemplation of the parties at the time of contracting are recoverable.  As it is the law in Indiana that parties pay their own attorney fees and litigation expenses[2], such expenses would not be reasonably contemplated by the parties at the time of contracting, absent an express reference in the contract to that effect. See Harco, Inc. v. Plainfield Interstate Family, 758 N.E.2d 931 (Ind. App. 2001), citing Davidson v. Boone County, 745 N.E.2d 895 (Ind. App. 2001).   Accordingly, the motion in limine will be granted.

Motion in Limine Regarding Plaintiff's Bad Faith, Punitive Damages, and Race Discrimination Claims

In this motion, West American requests that the court instruct counsel, parties and witnesses to refrain from making any mention or interrogation, directly or indirectly, and from

---

[2] Non-recoverable litigation expenses includes airline travel expense to attend litigation related events, filing fees and depositions, all of which Lottie has improperly claimed as damages.  Notably, Lottie has not produced any evidence to support these damage claims.

introducing or attempting to introduce evidence regarding Lottie's bad faith claim, his punitive damages claim, or his race discrimination claim.

West American states that it has reason to believe that Lottie may attempt to introduce evidence of his bad faith, punitive damages and/or race discrimination claims, which claims were removed from the case upon the granting of partial summary judgment in favor of West American.

In response, Lottie states that there is a significant evidentiary overlap between the bad faith, race discrimination claims and the breach of contract claim, such that the motion in limine is overly broad and impossible to enforce.

West American, in reply, acknowledges that there may be some overlap between the bad faith and breach of contract evidence, but denies that there could be any overlap of evidence between the race discrimination claim and the breach of contract claim. West American also states that it does not seek to prevent Lottie from introducing evidence which is otherwise properly admissible on his breach of contract claims. West American maintains that its motion in limine is directed to any evidence relating solely to the bad faith and race discrimination claims.

Clearly, West American is correct. The only claim remaining in this case is the breach of contract claim, and Lottie will only be permitted to present evidence in support of this claim. If that evidence also supports a claim of bad faith, then the evidence is still admissible to support the breach of contract claim. However, any evidence solely in support of bad faith or race discrimination will not be admissible. Further, Lottie may not refer to his claims of bad faith or race discrimination in front of the jury.

Accordingly, the motion in limine will be granted.

Motion in Limine Regarding Pretrial Motions, Procedures and Appeal

In this motion, West American requests that the court instruct counsel, parties and witnesses to refrain from making any mention or interrogation, directly or indirectly, and from introducing or attempting to introduce evidence regarding any pretrial motions filed by the parties, including but not limited to Defendant's Motion for Summary Judgment and Defendants' Motion to Certify Partial Final Judgment, procedures of litigation, and the appeal taken in this case.  West American argues that such evidence is irrelevant to the issues at trial, and potentially confusing and misleading to the jury.

Lottie has not responded to this motion.  Clearly, the motion is well-taken and will be granted.

Motion in Limine Regarding Plaintiff's Claimed Damages

In this motion, West American requests that the court instruct counsel, parties and witnesses to refrain from making any mention or interrogation, directly or indirectly, and from introducing or attempting to introduce evidence regarding any testimony or assertions that Lottie incurred the following damages from the alleged breach of contract, including: Lottie's unsupported, increased amounts for repairs to the two properties, property expenses (utility expense, taxes, mortgage expense, maintenance, and insurance), airline travel expense, filing fee and deposition costs, defamation damages claims, mental anguish/emotional distress claims, and attorneys' fees.

West American reiterates that the only remaining claim is for breach of contract.  In a breach of contract case, the measure of damages is the loss actually caused by the breach.

Sheppard v. Stanich, 749 N.E.2d 609, 611 (Ind. App. 2002). A non-breaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken. Id. As a general rule, the non-breaching party must mitigate his damages, and the breaching party has the burden to prove that the non-breaching party has not used reasonable diligence to mitigate his damages. Id. at 612. Where a party does mitigate its damages, the breaching party is entitled to set-off the amount of damages mitigated. Id.

West American contends that under the insurance policies issued to Lottie, he is only entitled to a depreciated value, or actual cash value ("ACV") of the properties. Thus West American takes the position that no replacement cost coverage can be claimed unless repairs or replacement costs are actually incurred and paid, and such coverages are provided by the policies and paid for by the insured. According to West American, Indiana follows the broad evidence rule in allowing several different types of evidence to determine the properties' current, depreciated or ACV at the time of the fires. West American maintains that Lottie is not entitled to recover damages which would place either property in a "better" or "enhanced" condition, such as with new or rebuilt materials.

In response, Lottie asserts that the insurance policies in question do not require the insured to make any repairs. The contract provision at issue (regarding Loss Settlement) states that "Covered property losses are settled as follows... Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following: . . . We will pay no more than the actual cash value of the damage unless: ... Actual repair or replacement is complete...." Lottie cites to other portions of the contract regarding coverages and duty after a loss, and appraisal rights, claiming that these portions of the contract render the Loss Settlement

9

portion of the contract ambiguous.

Clearly, however, the policy is not ambiguous. The policy specifically states that the settlement will be for replacement cost without deduction for depreciation, but that West American will pay no more than the actual cash value of the damage unless actual repair or replacement is complete. The portions of the contract Lottie relies on to establish ambiguity relate to the separate obligation of an insured to make reasonable repairs to the property following a covered loss, in order to prevent further damage. Such a provision does not change the manner in which West American is obligated to pay for the actual damages to the insured properties. That is, they are still paid by ACV, unless and until repairs or replacements are timely made and reported to the company. Likewise, the appraisal portion of the policies simply states that if an amount of damages cannot be agreed on before a lawsuit is filed, either party may demand an appraisal of the actual damages, but only for a covered loss. That is an elective or optional decision for either party. In the present case, the Birdsell claim was denied, and the Linden claim was still under consideration when Lottie filed suit. Thus, it remained disputed whether either was a covered loss at all. In any event, neither party attempted or requested appraisal of any damages and West American is correct that the appraisal clause has no proper reference or application here.

As West American points out, Lottie has not disputed that he did not make repairs or replace the properties in any way, and thus he is not entitled to anything more than the actual cash value of each property.

West American points out that Lottie has not disputed that he has never submitted, either pre-suit, during this litigation, in discovery or otherwise, any evidence that identifies the ACV of

10

each property.  Rather, the only damage information Lottie submitted was a repair cost estimate for each building.  West American rationalizes that the ACV or depreciated value of each property must be less than the repair cost estimates submitted.  Thus, West American requests that Lottie not be allowed to claim any damages in excess of the initial estimates submitted by Lottie for the Birdsell property ($16,881.88) and the Linden property ($15,105.20).

Lottie claims that West American "at no time requested documentation, formally or informally, to support the alleged damages."  As West American strongly contends, Lottie is absolutely wrong on this point.  The record in this case clearly shows that West American sought through its Request for Production of Documents to Lottie all documents identifying or relating to Lottie's claimed damages.  There is no evidence that, other than the repair estimates that had been submitted pre-suit, Lottie ever provided any discovery responses, or supplemented any discovery response, with any additional damage information.  The law is clear that Lottie is under a continuing obligation under the discovery rules to provide and/or supplement any additional information following an initial discovery response.

Lottie also asserts that West American was on notice of his claimed damages.  Again, West American strongly contends that Lottie is absolutely wrong, and that the lack of notice is precisely why it requested such damage information in the Request for Production of Documents.  West American acknowledges receiving two letters sent by Lottie's counsel (characterized by Lottie's counsel as "in settlement negotiations"), but argues that the letters do not properly constitute a discovery response or a supplementation.  Moreover, the letters did not identify the basis of any damage calculation, or include or refer to any paperwork, documentation, bills, or any other written or reviewable information upon which those claimed

11

damage amounts were based.   This court agrees with West American that the settlement letters did not put West American on notice of the claimed damages, as they did not constitute proper discovery responses or supplementation.

Lottie next argues that there is no dispute about damages because West American "did not raise the question of a discovery dispute and attempt to resolve the dispute pursuant to Local Rule 37.1"   As West American correctly argues, Lottie's argument completely misses the mark. There is no discovery "dispute" when a plaintiff simply fails to provide any information in discovery.  If a party fails to provide the requested information, he is certainly subject to a motion to strike his damages, a motion in limine, or an objection at trial when an attempt is made to introduce evidence, such as relating to damages, which defendants had sought in discovery, and the plaintiff simply failed to produce.

Lottie has argued that his compensatory damages should be measured by a current repair cost estimate, because "the damage to the properties is not permanent in nature."  However, West American again correctly states that this fact does not change the law nor does it change the contract between the parties.  The insurance polices in this case clearly state that Lottie is only entitled to ACV for property damages, unless and until he repairs or replaces the properties. Thus, whether the alleged damages are permanent bears no relevance or legal significance to the type of damages he may claim under the insurance policy contract.

West American next notes that Lottie has continuously increased the alleged compensatory and consequential damages form the property loss.[3]  Moreover, Lottie has claimed

---

[3] As of May 1, 2006, Lottie was alleging damages in the amount of $87,020.50 for the Birdsell property, and $83,089.50 for the Linden property.

as categories of damages which are not properly supported, identified in discovery, or allowable under law. Lottie identifies lost rents or lost rental income from each property and continues to claim those lost rents in an accumulating fashion. As West American argues, such amounts are not proper damages under the relevant law. The law clearly provides that Lottie is under a duty to mitigate his damages, and this includes the obligation to re-rent the properties. It is undisputed that Lottie has not done so. Moreover, Lottie has not identified, in discovery responses, the amount of monthly rentals he received for each of the two properties.

In addition to the lost rent, Lottie has claimed his mortgage expenses as damages. Clearly, such damages are not allowable. Lottie is only permitted to recover the consequential damages which flow from the alleged breach of contract. Obviously, Lottie would have had the mortgage expense, regardless of whether the properties were being rented to tenants, tenants had been evicted or had left the rental properties, or whether there had ever been any fire in either of the two properties. In any event, the mortgage expense was not identified and documented in discovery responses, and thus is not recoverable. It is clear that Lottie should not be permitted to use as evidence at trial any materials not previously produced. Thus, this court will limit Lottie's evidence to materials produced in the claims process, i.e., the two repair estimates that were initially submitted to West American.[4]  See Federal Rule of Civil Procedure 37(c); Dana

---

[4] It is undisputed that Lottie has not submitted any documentation in support of his damage estimates, other than the two repair estimates. Lottie does not dispute that he did not present itemized damages showing the depreciated or actual cash value of each of the properties. Lottie does not dispute that during the course of this lawsuit, he has not submitted any evidence, either real, documentary evidence or testimony from a party or properly identified witness, regarding any other amounts of damages to each of the properties in question. Lottie does not dispute that he never produced or supplemented any discovery response to West American regarding the damage information West American sought in discovery. Lottie does not dispute that he had a duty to mitigate his damages, including an obligation to repair and re-rent the

Corp. v. American Standard, Inc., 866 F.Supp. 1481, 1508 n. 97 (N. D. Ind. 1994); Langley v. Union Electric Co., 107 F.3d 510, 514 (7th Cir. 1997).

Even though the bulk of Lottie's claimed damages are not properly admissible due to failure to respond to discovery requests, the court will briefly discuss Lottie's claimed consequential damages.  With respect to the continuing and ongoing expenses, such as utility bills, taxes, mortgage expense, maintenance costs, and insurance costs, it is clear that neither the fires nor the alleged breach of contract <u>caused</u> these expenses.  Rather, these expenses were caused by Lottie's ownership of the property.  As West American notes, no authority supports the proposition that such expenses are recoverable damages from an alleged breach of contract. The law states that the expenses of property ownership are not actual damages which are reasonable expenses that flow from the natural consequence of a breach.  ABC Home & Real Estate Inspection, Inc. v. Plummer, 500 N.E.2d 1257 (Ind. App. 1987); Ethyl Corporation v. Forcum-Lannom Associates, Inc., 433 N.E.2d 1214 (Ind. App. 1982)(breach of contract damages are the losses actually suffered as a result of the breach, and a plaintiff is not entitled to be placed in a better position than he would have been had the breach not occurred); Thor Electric, Inc. v. Overly & Associates, Inc., (consequential breach of contract damages are only recoverable if they arise from the breach as a cause in fact of the claimed loss, and the breach must be a substantial factor or the predominating cause of the alleged damage); Berkel & Company Contractors, Inc. v. Palm & Associates, Inc., 814 N.E.2d 649 (Ind. App. 2004)(consequential damages may only be awarded on a breach of contract claim when the damage flows naturally and probably from the breach, and was contemplated by the parties when

---

properties, and that to date, he has failed to do so.

the contract was made).

Finally, West American seeks to exclude any emotional distress or defamation damages that Lottie may be seeking.[5] West American points out that Lottie did not properly plead, or ever identify in discovery, any emotional distress or defamation damages. Lottie did not provide any documentation, support, medical bills, medical records, doctor's opinions, or any evidence or documents identifying, establishing, or linking any such alleged damages to his insurance contract claim. This court agrees with West American that, due to lack of timely documentation, Lottie should not be permitted to claim damages for emotional distress or defamation. In any event, emotional damages are not recoverable in a breach of contract action. Tucker v. Roman Catholic Diocese of Lafayette, IN, 837 N.E. 2d 596 (Ind. App. 2005).

Accordingly the motion in limine will be granted.

### Conclusion

On the basis of the foregoing, the court hereby GRANTS the following motions:

(1)   Motion in Limine Regarding Settlement Offers and Offers of Judgment or Lack Thereof

(2)   Motion in Limine Regarding Lay Witness Expert Testimony

(3)   Motion in Limine as to Attorney Fees and Costs of Litigation

(4)   Motion in Limine Regarding Plaintiff's Bad Faith, Punitive Damages, and Race Discrimination Claims

(5)   Motion in Limine Regarding Pretrial Motions, Procedures and Appeal

---

[5] In a letter dated December 8, 2003, from Lottie's counsel to West American's counsel, Lottie claimed $250,000.00 as "Defamation Damages" and $250,000.00 for "Mental anguish/Emotional Distress".

15

  (6)  Motion in Limine Regarding Plaintiff's Claimed Damages

Entered: May 26, 2006.

                s/ William C. Lee
                William C. Lee, Judge
                United States District Court